UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA BRADFORD and SHANNON
HANSEN,

        Plaintiffs,

        v.

CHILDREN'S PROTECTIVE SERVICES
OF MICHIGAN (GENESEE COUNTY),
CPSI JANEY LAMAR, CPSS KATIE WILBY,
FLINT POLICE OFFICER TERRANCE
WALKER, and FLINT POLICE OFFICER MIKE
WEST,

        Defendants.

_____/

CASE NO. 2:12-CV-13718
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON DEFENDANT GENESEE COUNTY CPS'S
MOTION TO DISMISS (docket #11)**

I.     <u>RECOMMENDATION</u>: The Court should grant defendant Genesee County CPS's motion

to dismiss.

II.     <u>REPORT</u>:

A.     *Procedural Background*

        Plaintiffs Regina Bradford and Shannon Hansen commenced this action on August 22, 2012,

by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.  Named as defendants are

Child Protective Services of Genesee County ("Genesee County CPS" or "CPS"); CPS employees

Janey Lamar and Katie Wiliby; and Flint Police Officers Terrance Walker and Mike West.  In their

complaint, plaintiffs allege:

        [On] 5/19/2012 CPS worker Janey Lamar and Flint Police Officers Terrance

1

Walker and Mike Smith [sic] forced their way into our home breaking the wall and door jamb, I ran down stairs and asked what they were doing, and officers replied we are here to investigate the report of neglect. Just comply and we will be gone in 15 minutes, if not we are going to place you and Regina under arrest and take your children. I argued with Offices Walker and West for a few minutes, then resigned and followed them on a search of our home where they found nothing. One of the officers kept me inside while the other and CPS Investigator Janey Lamar went outside.

Upon hearing my wife yelling hysterically I pushed past the officer to get to my spouse and children. As I got to the RV parked in our driveway the officer was searching through the RV while Ms. Lamar again made accusations and threats against my spouse. To diffuse the situation I unwillingly agreed to take my son for an examination. After the examination the Dr. informed me CPS wanted the child due to neglect charges, and he then proceeded to try to lie to me stating our son Franklin Hansen had gained .01 ounces in a month when he had gained 13.96 ounces. I told the doctor I disagree with him, and was going to get a second opinion, the doctor then called social workers and security, who attacked me and took my son from me.

At that point Katie Wiliby interviewed med. They called Judge Krellwitz and used exaggerated, falsified, and misleading information to get a warrant to seize our children, and attempted to have me charged with kidnapping my own son.

Flint police refused to charge me, so CPS Investigator Wiliby then submitted a petition to the court full of falsified, exaggerated, information deliberately leaving out the facts to have our children removed. When we convinced the judge to give them back at hearing, Katie Wiliby falsified more statements to have them once again removed.

Compl., at 3-4; *see also*, *id.* at  Plaintiffs allege that defendants' actions caused them to lose their family business and plead guilty to false criminal charges. Plaintiffs claim that defendants' actions violated their rights under the Fourth and Fourteenth Amendments, and they seek monetary damages in the amount of $1.2 million.

This matter is currently before the Court on defendant Genesee County CPS's motion to dismiss, filed on December 14, 2012.[1]  CPS argues that, as an arm of the state of Michigan, it is immune from suit under the Eleventh Amendment. Plaintiffs filed a response on December 26,

---

[1]It does not appear that the individual defendants have yet been served in accordance with Rule 4 of the Federal Rules of Civil Procedure.

2012, defendant CPS filed a reply on January 10, 2013, and plaintiffs filed a sur-reply on January 18, 2013.  For the reasons that follow, the Court should grant defendant CPS's motion to dismiss.[2]

B.    *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6).  In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim.  *Id.* at 47.  Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47.  However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual

---

[2]On November 18, 2012, I entered an Order conditionally granting plaintiffs' application for appointment of counsel and referring the matter to the Court's *pro bono* attorney panel.  As of the date of this Report, counsel for plaintiffs has not been secured.  Defendant CPS's current motion does not require any factual development, does not implicate plaintiffs' claims against the individual defendants, and raises a single legal issue the resolution of which is clear.  Because of this, the Court may rule on the motion notwithstanding that counsel has yet to be secured for plaintiffs.

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557 (brackets omitted).

 Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

 In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

C. *Discussion*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by

4

citizens of the state being sued.  *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion).  This immunity is based on a two part presupposition:  (1) each state is a sovereign entity; and (2) "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."  THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed. 1961); *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Hans*, 134 U.S. at 13.  Thus, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also, Papasan v. Allain*, 478 U.S. 265, 276 (1986).  In determining "whether a state instrumentality may invoke the State's immunity," a court should "inquire[] into the relationship between the State and the entity in question," examining both "the essential nature and effect of the proceeding" and "the nature of the entity created by state law to determine whether it should be treated as an arm of the State."  *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997) (internal quotations and footnote omitted).  "The question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued."

Here, in light of the nature of the relationship between defendant Genesee County CPS and the State of Michigan, it is clear that defendant is entitled to invoke the State's Eleventh Amendment immunity.  In 1975, the Michigan legislature abolished county departments of social services, replacing them with a single state agency known now known as the Department of Human Services (DHS) (formerly known as the Family Independence Agency).  *See* 1975 Mich. Pub. Act. 237 (Oct.

5

1, 1975) (codified at MICH. COMP. LAWS §§ 400.1 *et seq*.).  All child protective service laws and

duties are directed to DHS, *see* 1975 Mich. Pub. Acts 238 (Oct. 1, 1975) (codified at MICH. COMP.

LAWS §§ 722.621-.638).  By virtue of the passage of Public Act 237, all county social service

workers became employees of the state government.  *See* 1975-76 MICH. ATT'Y GEN. OP. 4973 (Apr.

16, 1976).  "County" departments of social services, and by extension child protective services

offices are therefore not county agencies, but are merely local offices of the state DHS.  For this

reason, they are agencies of the state cloaked with the State of Michigan's Eleventh Amendment

immunity.  *See Robinson v. Ingham County Family Independence Agency*, No. 1:05-CV-436, 2005

WL 1907526, at *4 (W.D. Mich. Aug. 10, 2005) ("The Family Independence Agency, now known

as the Department of Human Services, is a department of Michigan government.  The inclusion of

a county name simply identifies the local division of the state department, and the employees at the

local division are state employees."); *Lintz v. Skipski*, 807 F. Supp. 1299, 1303 (W.D. Mich. 1992).

Defendant Genesee County CPS is represented in this action by the Michigan Attorney General,

something that is within the Attorney General's statutory duties if CPS is an agency of the state, *see*

MICH. COMP. LAWS § 14.29, but not if CPS is a county agency, *see In re Certified Question*, 465

Mich. 537, 546, 638 N.W.2d 409, 414 (2002) (Attorney General may not sue on behalf of county

in a matter of local interest).  Finally, and most importantly, *see S.J. v. Hamilton County, Ohio*, 374

F.3d 416, 420 (6th Cir. 2004) ("The most important factor bearing on the Eleventh Amendment

question is who would pay a judgment against the entity being sued."), any judgment against

defendant Genesee County CPS would be paid by the State of Michigan.  *See Robinson*, 2005 WL

1907526, at *4.

        Because defendant Genesee County CPS is an agency of the State of Michigan, it is immune

from suit under the Eleventh Amendment to the same extent as the State itself.  And because the State of Michigan has not consented to civil rights suits in federal court, *see Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986), it follows that plaintiffs' claims against defendant Genesee County CPS are barred by the Eleventh Amendment.[3]

D.    *Conclusion*

In view of the foregoing, the Court should conclude that defendant Genesee County CPS is immune from plaintiff's suit under the Eleventh Amendment.  Accordingly, the Court should grant defendant's motion to dismiss, and should dismiss Genesee County CPS from this suit.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931

---

[3]In their initial response, plaintiffs argue both the merits of their claims and whether the individual defendants are entitled to some form of immunity such as qualified immunity or prosecutorial immunity.  These issues do not bear on whether CPS, as an arm of the State, is immune from suit under the Eleventh Amendment.  Personal immunities such as qualified immunity are separate and distinct from sovereign immunity under the Eleventh Amendment.  *See Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 163-64 (2d Cir. 2005)  In their sur-reply, plaintiffs further argue that "the state's 11th Amendment protection of immunity from suit is disqualified where the alleged actions were direct violations of citizens Constitutionally protected rights . . . ."  Pl.s' Ans. to Def.'s Remotion to Dismiss, at 1.  This argument is incorrect as a matter of law.  Under the Eleventh Amendment a state is immune from suit regardless of the importance or merit of the plaintiff's claims.

7

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: June 25, 2013

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Regina Bradford and Counsel of Record on this date.

Dated: June 25, 2013                                      s/ Lisa C. Bartlett
                                                         Case Manager

8